UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CITY OF SHOREWOOD,                          CIV. NO. 11-374 (JRT/JSM)

      Plaintiff,                          REPORT AND RECOMMENDATION

v.

RONALD R. JOHNSON,
DEE L. JOHNSON,

      Defendants.


The above matter came on before the undersigned on Plaintiff's Motion to Remand to State Court [Docket No. 9] and Plaintiff's Motion for Sanctions [Docket No. 15].[1]  Corrine Heine, Esq. appeared on plaintiff's behalf.  Ronald R. Johnson appeared pro se.  There was no appearance by or on behalf of defendant Dee L. Johnson.  This matter was referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

## I.    BACKGROUND

The factual background of the Johnsons' twenty-year course of litigation against the City of Shorewood (the "City") has been exhaustively described by the Eighth Circuit in Johnson v. City of Shorewood, 360 F.3d 810 (8th Cir. 2004) (cert. denied 543 U.S. 810 (Oct. 4, 2004)) and by the Minnesota Court of Appeals in Johnson v. City of Shorewood, Minn. Ct. App. No. A06-2353, 2008 WL 434680 (Minn. Ct. App. 2008, Feb.

---

[1]    The City of Shorewood's motion for sanctions is non-dispositive.  However, because the City's motion for sanctions is so intertwined with its motion for remand, the two issues will be addressed in this Report and Recommendation.

19, 2008).   This Court will not recite the full twenty-year procedural history of the Johnsons' litigation, but will discuss those portions in so far as they relate to the City's pending Motion to Remand and Motion for Sanctions.

The Johnsons sued the City in an inverse condemnation action in Minnesota state district court in 1991.   Affidavit of Corrine Heine, ("Heine Aff.), Ex. A (Findings of Fact, Conclusions of Law and Order for Judgment, <u>Johnson v. City of Shorewood</u>, Henn. Co. Dist. Court File No. 91-18099) [Docket No. 12].   This 1991 lawsuit arose out of the City's construction of a road berm, culvert, pond and pond-control structure on the southern boundary of the Johnsons' property.   <u>Id.</u>, ¶¶7, 8, 15-17.   The state district court, (then-Hennepin County District Judge Ann D. Montgomery), concluded that the "physical invasion of the Johnsons' property during the period in which the pond control structure was operational is an irreversible taking which requires compensation."   <u>Id.</u>, Conclusion of Law, ¶4.   The district court issued a writ of mandamus compelling the City to commence condemnation proceedings to compensate the Johnsons for the City's taking.   <u>Id.</u>, Order for Judgment, ¶ 1.   The Minnesota Court of Appeals affirmed this judgment.   <u>See</u> <u>Johnson v. City of Shorewood</u>, Minn. Ct. App. No. CX-93-2452, 1994 WL 193829 at *4 (Minn. Ct. App., May 11, 1994) ("Johnson I").

The City instituted condemnation proceedings and awarded the Johnsons $2,000 for an easement and $3,000 in "cost to cure" damages.   The Johnsons initiated a second suit in state district court, contesting the scope of the taking and the amount of the award.   <u>Johnson v. City of Shorewood</u>, Henn. Co. Dist. Court File No. 27-CV/CD-2344.   The jury returned a special verdict awarding the Johnsons $2,000 for the easement, zero dollars  for the difference between the pre- and post-takings fair market

value of their property and $63,000 for clean-up damages.[2]  The district court found that the first two awards were inconsistent and entered judgment for $63,000.  Johnson II, 1998 WL 188561 at *1.  The City moved for JNOV or a new trial, which the district court denied, and then appealed the court's denial of its motion.  Id.  The Johnsons cross-appealed the district court's denial of their motion for contempt and exclusion of their "loss of access" evidence.  Id.  The Johnsons' contempt motion was based on their argument that an inaccurate legal description used during the takings proceeding did not include all of the property and that the City should be held in contempt for failing to condemn all of the property.  Id. at *4.  The Minnesota Court of Appeals denied both parties' appeals and affirmed the district court's orders.  Id. at *4.  The district court entered final judgment on January 5, 2000.  Heine Aff., Ex. B (Order for Judgment).

   In 2000, the Johnsons filed a 24-count complaint in federal district court, naming as defendants the City, together with the City of Minnetonka, the Riley-Purgatory-Bluff Creek Watershed District, various private real estate developers and the United States (acting through the Army Corps of Engineers and certain Army officials).  See Johnson v. City of Shorewood, 360 F.3d 810, 814 (8th Cir. 2004) ("Johnson III"); Johnson v. City of Shorewood, Minn. Ct. App. No. A06-2353, 2008 WL 434680 at *2 (Minn. Ct. App. 2008, Feb. 19, 2008) ("Johnson IV").  The Johnsons asserted various constitutional violations, but their primary allegation was that the defendants effected regulatory and physical takings of their property and conspired to prevent them from receiving just

---

[2]    The Court of Appeals construed the clean-up damages to incorporate the decreased value of the property because "but for" the Johnsons' clean-up of their property, prospective purchases would have deducted the costs from the purchase price.  City of Shorewood v. Johnson, App. No. C5-97-1525, 1998 WL 188561 at *2 (Minn. Ct. App., April 21, 1998) ("Johnson II").  Therefore, the clean-up costs were in the nature of compensation for the taking of the Johnsons' property.

compensation.   Johnson III, 360 F.3d at 814.   Based on the Report and

Recommendation of then-Magistrate Judge Susan Richard Nelson, District Court Judge

Donovan Frank dismissed the claims against the United States, granted summary

judgment to the other defendants, and declined to exercise supplemental jurisdiction

over the remaining state law claims. Id. The Eighth Circuit affirmed. Id., at 820.  Noting

that the Johnsons had already filed a takings claim against the United States in the

Court of Federal Claims,[3]  the appellate court also affirmed Judge Frank's conclusion

that the United States Court of Federal Claims had exclusive jurisdiction over takings

claims against the United States that exceed $10,000.  Id. at 816.  On October 4, 2004,

the United States Supreme Court denied the Johnsons' petition for writ of certiorari.

Johnson v. City of Shorewood, 543 U.S. 810 (2004).

In 2004, the Johnsons re-filed their 24-count, 2000 federal complaint in Hennepin

County District Court.   Johnson IV, 2008 WL 434680 at *5.   The state district court

granted summary judgment on all claims, and the Minnesota Court of Appeals affirmed

that decision on February 19, 2008, stating:

> A final word is, be believe, appropriate.  Litigation between
> appellant and the numerous respondents has been on-going
> for over 16 years.  Five Minnesota district court judges have
> ruled on various issues; the federal district court for the
> district of Minnesota has done so also; this court has issued
> three appellate opinions, this opinion is the fourth; the Eighth
> Circuit Court of Appeals has spoken; two petitions for further
> review have been denied by the Minnesota Supreme Court;

---

[3]      In 2001, Johnsons filed a suit in the Court of Federal Claims alleging "(1) both
physical and regulatory takings arising out of the 1984 flooding, (2) tort claims against
the government, and (3) that the United States Fish and Wildlife Service, by designating
part of the subject property a wetland on its 1980 inventory map, had breached implied
and/or express contracts with [them]. All claims were dismissed—unchallenged by
appellant—based on the statute of limitations, lack of jurisdiction, and Fed.R.Civ.P.
12(b)(6), respectively." Johnson IV, 2008 WL 434680 at *2.

4

one petition for writ of certiorari has been denied by the United States Supreme Court. All issues have been resolved. Although we are not insensitive to appellant's belief that he has not received the relief to which he is entitled, we must disagree. Each of appellant's claims have been resolved. He is not satisfied with the resolution, but the claims are nonetheless resolved. * * * It is time that this prolonged litigation and the emotional and financial toll it has taken on all involved—appellant and respondents alike—is declared to be at an end.

Id. at *15.

On January 2, 2009, the City filed a Final Certificate for the condemnation proceedings, as required by Minn. Stat. §117.205.[4]  Heine Aff., Ex. C.  The Certificate was recorded by the Hennepin County Recorder on August 3, 2009.  Id.  In December, 2008, defendant Ron Johnson began writing to Judge James T. Swenson, Chief Judge of the Fourth Judicial District, complaining about various judicial officers and asking that the January 2, 2009 Final Certificate filing be stricken.  Heine Aff., Ex. D, p. 4 (Order and Memorandum, Henn. Co. District Court File No. 27-CV/CD-2344, July 28, 2009). Chief Judge Swenson described the issue before him as follows:  "whether the Final Certificate filing was untimely; and whether there was a defect in the condemnation process used by the City such that the Final Certificate must be stricken."  Id., p. 5.

The Johnsons argued that the filing of the Final Certificate was controlled by Minnesota's ten-year statute of limitations for actions on a judgment and, therefore, the Certificate had to be filed no later than 2007.  Id.  Chief Judge Swenson rejected that

---

[4]  Minn. Stat. §117.205 provides that upon completion of a condemnation proceeding, "the attorney for the petitioner shall make a certificate describing the land taken and the  purpose or purposes for which taken, and reciting the fact of final payment of all awards or judgment in relation thereto, which certificate shall be filed with the court administrator and a certified copy thereof filed for record with the county recorder; which record shall be notice to all parties of the title of the petitioner to the lands therein described."

argument, noting that a Final Certificate cannot be filed until condemnation proceedings are complete, and condemnation proceedings are not complete until final payment has been made.   Id., p. 6.   Further, the court concluded that res judicata precluded the Johnsons from contending that the eminent domain process leading up to the Final Certificate was fatally flawed.  In this regard, Chief Judge Swenson explained that:

> res judicata precludes Johnson from reasserting within this latest round of litigation any claims previously raised during the condemnation proceedings, as well as those that should have been raised… .
>
> ***
>
> After carefully reviewing the four volume docket in this case, it appears quite clear that adequacy of the compensation paid to Johnson has already been litigated (albeit not to his satisfaction).
>
> ***
>
> What is at stake here is only the filing of the Final Certificate, which is the culmination of the previous eminent domain proceedings.   It is an administrative end to an otherwise completed proceeding.
>
> ***
>
> None of Johnson's myriad claims warrant an order striking the Final Certificate filing.

Id., pp. 7, 10.

On August 26, 2009, the Johnsons challenged Chief Judge Swenson's Order by filing in Hennepin County District Court a pleading entitled "Rule 59/60/81 Motion to Strike the City's 2009 Title Filing and For Other Relief Going Forward."   Plaintiff's Memorandum in Support of Motion for Remand ("Pl. Mem. in Support'), p. 3 [Docket No. 11].  The City moved for an order requiring that all pleadings submitted by the Johnsons

be reviewed and signed by an attorney before service and filing,[5] and requesting sanctions. Heine Aff., Ex. E (Notice of Motion and Motion).  The City alleged that the Johnsons' "current legal action and continued litigation of this matter is frivolous, as it is comprised of claims previously adjudicated in full between the parties, and other claims without any basis in law or fact.  As a result, [the City] is needlessly incurring ongoing litigation costs and expenses."  Id.  The Johnsons removed the state case to federal court, alleging that "this is a quiet title matter on Johnsons' defenses involving federal claims and questions."  Notice of Removal, Civ. No. 09-3009 (ADM/JSM), [Docket No. 1].  The City moved to remand the matter back to state court, arguing that the notice of removal was not timely filed, and that the federal court lacked subject matter jurisdiction over the case because the City's motion for pre-filing conditions and sanctions did not raise any federal questions.  Plaintiff's Memorandum  in Support of Motion to Remand, pp. 1, 4-6, Civ. No. 09-3009 (ADM/JSM) [Docket No. 11].  Judge Montgomery ordered that the case be remanded, noting that the deadline for removal pursuant to 28 U.S.C. §1446(b) passed thirty days after the initial pleadings in the 1994 condemnation action had been served.  Order, February 12, 2010, pp.1-2, Civ. No. 09-3009 (ADM/JSM) [Docket No. 23].  Having concluded that the removal notice was procedurally defective, Judge Montgomery did not reach the issue of subject matter jurisdiction.  Id.

The Johnsons appealed Judge Montgomery's order to the Eighth Circuit.  Eighth Cir. Ct. Appeals No. 10-1467, Notice of Appeal filed February 26, 2010.  The Eighth Circuit dismissed Johnsons' appeal with prejudice on April 1, 2010 and the Johnsons

---

[5]     The Johnsons were represented by counsel in connection with some of the court actions described above.  They are now pro se in connection with the motions now before the Court.

7

filed a letter addressed to Michael Gans, the Clerk of Court for the Eighth Circuit, asking that the court sua sponte reverse its April 1, 2010 order of dismissal.  Eighth Cir. Ct. Appeals No. 10-1467, Docket entries dated April 1, 2010; April 7, 2010.   On April 9, 2010, the Johnsons filed a "Motion to Reconsider Based on Want of Due Process and Appellee's Frauds on the Court."  Eighth Cir. Ct. Appeals No. 10-1467, Docket entry dated April 9, 2010.  The Eighth Circuit denied the Johnsons' motion for reconsideration on April 13, 2010.  Eighth Cir. Ct. Appeals No. 10-1467, Order, April 13, 2010.  The court also denied what it construed to be Johnsons' motion for rehearing.  Eighth Cir. Ct. Appeals No. 10-1467, Order, May 11, 2010.

On February 26, 2010, the same day the Johnsons filed their Notice of Appeal with the Eighth Circuit, they filed a "Rule 27 Motion" seeking to have the federal district court "bring before the appellate panel" the records of their two previous appeals.  Civ. No. 09-3009 (ADM/JSM), [Docket No. 28].  On March 1, 2010 the Johnsons filed a motion to stay remand. Civ. No. 09-3009 (ADM/JSM) [Docket No. 33].  On March 3, 2010, the Johnsons filed a "Request to Un-Remand," which asked the Clerk of the Federal District Court to "retract the erroneous remand."  Civ.  No.  09-3009 (ADM/JSM)[Docket No. 38].  On March 8, 2010, the Johnsons filed a Third Notice of Removal.  Civ. No. 09-3009 (ADM/JSM) [Docket No. 44].

On April 13, 2010, Judge Montgomery wrote to Ron Johnson in response to a letter she had received from him in which he asked for a hearing on his "post-judgment motions."  Civ. No. 09-3009 (ADM/JSM) [Docket No. 66] (letter dated April 13, 2010 from Judge Montgomery to Ronald Johnson).  Judge Montgomery explained that the notice of appeal had divested the district court of jurisdiction to consider his motions,

which were filed after he filed his notice of appeal.  Id.  As a result, "[t]here is no matter currently pending before the Court that requires a  hearing, and, therefore, your request for a hearing is denied.  Your case in federal court is now concluded."  Id.

The state district court then took up the remanded case and considered and ruled on the motions that had been pending before the Johnsons removed the matter to federal court—the City's motion for pre-filing conditions and sanctions pursuant to Minn. Gen. R. Pract. 9.06, and Johnsons' "Rule 59/60/81 Motion to Strike the City's 2009 Title Filing and for Other Relief Going Forward."  In connection with these motions, it appears that the Johnsons also asked to bring a motion to re-open all of the closed cases related to their property.  Heine Aff., Ex. F (Order and Memorandum, Henn. County District Court Civ. No. 27-CV/CD-2344, Feb. 7, 2011).  Judge Robert Blaeser granted the City's motion, and ordered that Ronald Johnson could not file any new cases, motions, or correspond with the Court unless an attorney licensed to practice law in Minnesota signed the pleadings or correspondence, and the Chief Judge or Presiding Judge of the Civil Division approved.  Id., p. 1.  Judge Blaeser noted that "[Johnson] has already pursued his claims many times and received adverse results.  There is no reasonable probability that [Johnson] will prevail on his claims.  Some of [Johnson's] claims have been made for purposes of harassment, delay or vexatiousness, or otherwise in bad faith [ ].  The City incurs injury in each frivolous claim brought by [Johnson] and the efficient administration of justice is hindered as a result of the claims, motions, and requests made by [Johnson]."  Id., p. 7 (footnotes omitted).  In addition, Judge Blaeser denied Johnson's "Rule 59/60/81 Motion to Strike the City's 2009 Title Filing and For

Other Relief Going Forward" and denied his request to bring a motion to re-open the closed cases relating to his property.  Id., p. 1.

On February 15, 2011, eight days after Judge Blaeser's Order was entered, the Johnsons removed the state case again to federal court.  Notice of Removal [Docket No. 1].  The Notice of Removal stated that "the instant federal issue is that the City used this Court to perpetuate its cover-ups by bringing its previous motion to remand," (id., p. 1) apparently referencing Judge Montgomery's February 12, 2010 order to remand. According to the Johnsons, the City misrepresented to Judge Montgomery that there were unresolved state court issues that required adjudication before federal jurisdiction would ripen.  Id., p. 2.  The Johnsons asserted this was a ruse to return the case to state court, and then deny them their "1st Amendment right of access to the state court." Id.  The Johnsons alleged that the City did some work on their property without a valid "33 U.S.C. §1344 permit" ("Permits for Dredged or Fill Material"), which they submitted also gave rise to federal question jurisdiction.  Id., p. 4.  According to the Johnsons, removal was appropriate pursuant to 28 U.S.C. §1446(b) "on subsequent new events which additionally deprived the Johnsons of their federal civil rights."  Id., p. 1.

The Notice of Removal stated that the Johnsons wanted: (1) a writ of certiorari to the state court to "obtain the record;" (2) a finding that the City abused its right to remand by subsequently blocking Johnsons' 1st Amendment right to access the state courts; (3) a determination that the City does not have a valid permit pursuant to 33 U.S.C. §1344; (4) a determination that there are valid grounds for re-opening the prior federal matter (Johnson III) because the condemnation is not complete; (5) a determination that the City took more land that it had condemned; (6) a finding that the

City did not file its Final Certificate earlier because it lacked a good faith basis for doing so; (7) a determination that the City did not comply with Judge Montgomery's 1993 orders;[6] (8) a determination that the City violated the 4th Amendment and the federal decrees in "Yanke" and "Pilsner;" and (9) a declaration that the City's conduct violated the 14th Amendment.  Notice of Removal, pp. 4-5.[7]

The City has now brought two motions – a motion to remand the case back to state court, and a motion for sanctions.  With respect to the remand motion, the City argued that there was no basis for removal and the case must be remanded to the state court because nothing in Judge Blaeser's February 7, 2011 order gave rise to federal question jurisdiction.  Pl. Mem. in Support, p. 4-5; Plaintiff's Reply Memorandum ("Pl. Reply"), pp. 1-2 [Docket No. 36].  Further, "[d]iscussing old disputes and an unrelated code enforcement proceeding, Defendants' responsive documents fail to address the specific state court order that was the claimed basis for removal."  Pl. Reply, pp. 1-2.

As for the motion for sanctions, pursuant to Fed. R. Civ. P. 11, the City asked that the Court prohibit the Johnsons from filing any further pleadings or papers unless they have been signed by an attorney licensed to practice in this Court or unless the Court grants permission for the filing.  Amended Notice of Hearing on Motion for Sanctions, p. 1 [Docket No. 15]; proposed Order.  Further, the City sought an award of fees it incurred in connection with its motion for remand for and for sanctions.  Id.; Affidavit of Corrine Heine, Esq. Regarding Attorney Fees ("Heine Fee Aff.") [Docket No.

---

[6]     These orders are not identified.

[7]     28 U.S.C. §1446(d) requires that the Notice of Removal contain a "short and plain statement of the grounds for removal… ."  The Johnsons' Notice of Removal seems to contain a prayer for relief more in the nature of a complaint than a Notice of Removal.  See Notice of Removal, pp. 4-5 [Docket No. 1].

19]. The City stated that it had already spent $1,912.20 in fees and costs and estimated that it would spend an additional $1,600 in preparing and filing reply papers in connection with the motions. Heine Fee Aff., ¶3.

## II. ANALYSIS

### A. Motion for Remand

The Johnsons' opposition to the City's motion for remand can be summarized on two grounds: first, the motion was not timely filed;[8] and second, their various claims and the City's motion for sanctions give rise to federal question jurisdiction. See Transcript of Motions Hearing ("Tr."), pp. 11, 14, 18-19, 26 [Docket No. 41].

Federal courts are courts of limited jurisdiction. Steel Co. v. Citizens for a Better Env't, 523 U. S. 83, 94-95 (1998). "The requirement that jurisdiction be established as a threshold matter spring[s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception. Id. (internal quotation and citation omitted.). If a case could have originally been brought in federal district court, a defendant may remove it from state court. 28 U.S.C. §1441. A party opposing removal may move for the federal court to remand the case back to the state court, and the federal district court shall remand the matter if the court determines that it lacks subject

---

[8] This argument was not raised in the Johnsons' opposition memorandum, but was raised for the first time at the motions hearing. Given that the City had no opportunity to address that argument in its Reply, that alone would be a basis for rejecting the argument. See In re Viagra Prods. Liability Litig., 658 F. Supp.2d 936, 942, n.5 (D. Minn. 2009) (noting that argument raised for the first time at the hearing is not properly before the court); Richards v. Lumpkin, Civ. No. 10-245, 2011 WL 1740033 at *3 (E. D. Ark.) (arguments raised for a the first time at a hearing are not properly before the court); Hoover v. Trent, Civ. No. 07-47, 2008 WL 2308079 at *13 (N.D. W.Va. 2008) (same). Nevertheless, as the Johnsons are pro se, the Court addresses their submission with the requisite liberality. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004).

matter jurisdiction or if the party opposing removal makes a motion based on a defect

other than lack of jurisdiction.  28 U.S.C. §1447(c).

     Section 1447(c) further provides:

> A motion to remand the case on the basis of any defect
> <u>other than lack of subject matter jurisdiction</u> must be made
> within 30 days after the filing of the notice of removal under
> section 1446(a). <u>If at any time before final judgment it
> appears that the district court lacks subject matter
> jurisdiction, the case shall be remanded.</u> An order remanding
> the case may require payment of just costs and any actual
> expenses, including attorney fees, incurred as a result of the
> removal.

28 U.S.C. §1447(c) (emphasis added).

     "Federal courts are to 'resolve all doubts about federal jurisdiction in favor of

remand' and are strictly to construe legislation permitting removal."  <u>Dahl v. R. J.

Reynolds Tobacco Co.</u>, 478 F.3d 965, 968 (8th Cir. 2007) (quoting <u>Transit Cas. Co. v.

Certain Underwriters at Lloyd's of London</u>, 119 F.3d 619, 625 (8th Cir. 1997)).  The

party seeking removal and opposing remand bears the burden of establishing federal

subject matter jurisdiction.  <u>Moua v. Jani-King of Minn., Inc.</u>, 613 F. Supp. 2d 1103,

1106 (D. Minn. 2009) (citing <u>In re Bus. Men's Assurance Co. of Am.</u>, 992 F.2d 181, 183

(8th Cir. 1993)).

### 1.    Timeliness of Motion for Remand

     The Johnsons submitted that the City's motion for remand was not timely filed, as

his Notice of Removal was filed on February 15, 2011 and the City's Motion to Remand

was filed July 19, 2011.  Tr., p. 26; Notice of Removal [Docket No. 1]; Motion to

Remand to State Court [Docket No. 9].  Pursuant to 28 U.S.C. §1447(c) a motion to

remand on the basis of any defect <u>other than lack of subject matter jurisdiction</u> must be

made within thirty days after the filing of a notice of removal.  The City conceded that its motion to remand was not made within thirty days, but argued that as the basis for remand was lack of subject matter jurisdiction, the statute's 30-day requirement did not apply.  Id.

Under the plain language of 28 U.S.C. §1447(c), where the basis for the  motion for remand was lack of subject matter jurisdiction, the Court finds that the City was not required to move for remand within thirty days.   Indeed, the statute expressly contemplates that upon appearance that the court lacks subject matter jurisdiction, remand can (and shall) take place any time before final judgment.  Therefore, the Court rejects Johnsons' timeliness argument.

### 2.    Subject Matter Jurisdiction

The City correctly asserted that nothing has occurred as a result of Judge Blaeser's February 7, 2011 Order that would support removal of this matter to federal court.  The parties are not diverse, and not withstanding the Johnsons' arguments to the contrary, there is no federal question that arose as a result of Judge Blaeser's order. Based on Johnson's pleadings, Notice of Removal and arguments at the motion hearing, it is very clear to this Court that it is not Judge Blaeser's order that created a federal question.  Rather, what the Johnsons want to do is to re-litigate issues arising under federal law that have been decided conclusively by the state and federal courts or raise new issues under federal law, and they are hoping that removal to federal court will give them a platform for doing so.  This the Johnsons cannot do.

For example, the Johnsons argued that pursuant to the <u>Williamson</u> doctrine, Judge Blaeser's order represents the exhaustion of their state court remedies, opening

the door to a federal claim.  Tr., pp. 10-11.  It does not.  Takings claims are not ripe for adjudication in federal court unless and until they have been exhausted in state administrative and judicial proceedings.  See Williamson County Reg'l Planning Comm. v. Hamilton Bank, 473 U.S. 172, 195 (1985).  Pursuant to Williamson, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation."  Id. at 195.  Consequently, "until the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State, the owner has not suffered a violation of the Just Compensation Clause."  Id. (emphasis added).  The Johnsons availed themselves of the inverse condemnation process and were awarded compensation for their property. What the Johnsons never did, however, is contest the amount of the award.  See Johnson v. City of Shorewood, Minn. Ct. App. No. C5-97-1525, 1998 WL 188561 at *1 (April 21, 1998) (City's appeal from district court's denial of its motion for JNOV or a new trial after jury returned an award of $63,000 to the Johnsons; Johnsons did not appeal the amount of the jury's award).  The Johnsons have never been satisfied with the amount of compensation they received for the taking of their property.  But lack of satisfaction with the amount of compensation does not amount to the denial of just compensation.  Therefore, the Williamson doctrine does not apply to this matter.

Furthermore, federal courts must give full faith and credit to state court judgments.  See 28 U.S.C. § 1738; Migra v. Warren City Sch. Dist. Bd. Of Educ., 465 U.S. 75, 81, (1984).  A state court judgment on the merits is binding absent a grant of certiorari from the United States Supreme Court or the existence of a statute providing

for federal review of the state decision.  See, e.g., 28 U.S.C. § 2254.  Additionally, under the Rooker-Feldman doctrine, a federal court lacks subject matter jurisdiction to exercise appellate jurisdiction over a state court decision.  Rooker v. Fidelity Trust Co., 263 U.S. 413, (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  Thus, the Johnsons are precluded from collaterally attacking Judge Blaeser's order, or any of the decisions or judgments of the state district court, by removing the case the federal district court and asking for a "re-do" of the state court's decisions.

Finally, this Court rejects the Johnsons' assertion that their "claims" under 33 U.S.C. §1344 establish federal subject matter jurisdiction.  Jurisdiction cannot be created by asserting new claims after removal.  Foster v. Bank One Texas NA, 54 Fed. Appx. 592, *1 (5th Cir. 2002) (citing Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 264 (5th Cir. 1995) (removal determined according to the plaintiffs' pleading at the time of the petition for removal); see also Kruso v. International Tele. & Tele. Corp., 872 F.2d 1416, 1426, n. 12 (9th Cir. 1989) (the court will not consider allegations in a proposed amended complaint to determine if removal is proper) (citing C. Wright & A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3739, at 580-81 (2d ed. 1985) ("Whether an action should be remanded must be resolved by reference to the complaint at the time the petition for removal was filed.").  The Johnsons' Water Act allegations surfaced for the first time in their Notice of Removal.  Those claims did not form any part of the state court action the Johnsons are attempting to remove, and are wholly unrelated to Judge Blaeser's order.  The Johnsons cannot base removal on these new issues.

In sum, this Court concludes that there is no basis for removal of the state district court case to federal court.  There is no diversity of citizenship and there is no federal question jurisdiction.  Therefore, remand is proper and the City's motion for remand should be granted.

### B.   <u>Motion for Sanctions</u>

In addition to seeking remand of this case back to state court, the City seeks sanctions against the Johnsons in the form of a prohibition from filing any further pleadings or papers concerning their disputes with the City unless they have been signed by an attorney licensed to practice before this Court or unless the Court grants permission for the filing.  The City also seeks an award of fees and costs for time and expense it incurred in connection with its motion for remand for and for sanctions.  I this regard, the City has requested an award in the amount of $3512.20 in fees and costs for the time and expense associated with these motions.   Heine Fee Aff., ¶3.   The Johnsons challenged the City's motion for sanctions as "factually groundless and lack[ing] legal merit."   Defendants' Memorandum of Law in Opposition to Sanctions Proposed by Plaintiff ("Defs. Opp. Sanctions Mem."), p. 1 [Docket No. 32].  They did not, however, challenge the amount of hours the City's counsel expended or the reasonableness of the fees and costs requested.

### 1.   Prohibition Against Further Litigation

The "'right of access to the courts is neither absolute or unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous or malicious.'"   <u>In re Winslow</u>, 17 F.3d 314, 315 (10th Cir. 1994) (quoting <u>Tripati v. Beaman</u>, 878 F.2d 351, 353 (10th Cir. 1989)).  Federal courts have the inherent power

to impose sanctions to regulate their dockets, to promote judicial efficiency, and to deter frivolous filings.  See eg. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-67 (1980) (describing the various ways in which federal courts may sanction parties and litigants). Where a party "'has engaged in a pattern of litigation activity that is manifestly abusive,' restrictions are appropriate."  Id. (quoting Johnson v. Cowley, 872 F.2d 342, 344 (10th Cir. 1989)).  To deter such activity, a district court may bar litigants from any additional filings without first obtaining leave from the court.  Feathers v. Chevron U.S.A., 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation.") (citation omitted).

Over the course of twenty years the Johnsons have filed case after case against the City, with all of the cases arising out of the same operative facts.  They have been to the state district court, the Minnesota Court of Appeals, the Minnesota Supreme Court, the United States District Court, the Eighth Circuit Court of Appeals and have petitioned the United States Supreme Court for review.  As pro se litigants, they are entitled to the liberal construction of their pleadings, but they have abused that status by forcing the City to respond to repetitive claims that no appellate court has found meritorious.  As Judge Blaeser noted, the Johnsons' actions come at a high cost to the City and to the judicial system, which must divert time and resources from the efficient administration of justice to deal with the Johnsons' matters.  The Johnsons had timely notice that the City was seeking sanctions in the form of filing restrictions and an award of fees, had the opportunity to respond, and did so.  See Defs. Opp. Sanctions Mem.  Additionally, this Court is highly satisfied that the Johnsons have had more than ample opportunity to air their grievances and have their day in court regarding the City's actions with respect to

their property.   Under these circumstances, the Court finds that any future suits or pleadings filed in this Court are highly likely to be frivolous and recommends that the Johnsons be prohibited from filing any new lawsuits and any pleadings or other papers in the District of Minnesota concerning their disputes with the City over their property unless (1)  they are represented by counsel licensed to practice before this federal court, (2) or they obtain prior written approval from a United States District Court Judge or United States Magistrate Judge in the District of Minnesota.

### 2.    Attorneys' Fees and Costs

The City sought an award of attorneys' fees and costs pursuant to Fed. R. Civ. P. 11.[9]  City of Shorewood's Memorandum of Law in Support of Motion for Sanctions, p. 1 [Docket No. 17].  The "central purpose of Rule 11 is to deter baseless filings in district court and thus, ... streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  For the reasons previously articulated above, the Court finds that an award of fees in the City's favor is necessary to deter the Johnsons from further frivolous filings and to compensate the City for its costs in responding to the Johnsons' meritless Notice of Removal.

Having determined that an award of fees of appropriate, the Court must determine a reasonable amount of fees.  The most useful starting point for determining the amount of a reasonable fee is the number of hours expended on the litigation multiplied by a reasonable hourly rate.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Gumbhir v. Curators of the Univ. of Missouri, 157 F.3d 1141, 1146 (8th Cir.

---

[9]     The City could have also sought an award of attorney's fees and costs pursuant to the remand statute, but did not do so.  See 28 U.S.C. §1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.").

1998) (citations omitted); <u>Transclean Corp. v. Bridgewood Serv., Inc.</u>, 134 F. Supp. 2d 1049, 1052 (D. Minn. 2001).   This approach is commonly known as the lodestar method.   In addition, when assessing hourly rates, the Court may draw on its own experience and knowledge of prevailing market rates as well as the attorneys' descriptions of their experience.   <u>Warnock v. Archer</u>, 397 F.3d 1024 (8th Cir. 2005).

"Under the lodestar method, the Court determines the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Young v. Diversified Consultants, Inc.</u>, 554 F. Supp. 2d 954, 956 (D. Minn. 2008) (J. Davis) (<u>quoting</u> <u>Hensley</u>, 461 U.S. at 433).   A reasonable hourly rate is usually the ordinary rate for similar work in the community where the case has been litigated.   <u>Emery v. Hunt</u>, 272 F.3d 1042, 1048 (8th Cir. 2001); <u>McDonald v. Armentrout</u>, 860 F.2d 1456, 1458-59 (8th Cir. 1988) ("Requested rates should be in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (<u>quoting</u> <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n. 11 (1984)). The fee applicant bears the burden to produce evidence to support the rates charged and hours worked.  <u>Hensley</u>, 461 U.S. at 433.

Once a lodestar amount is determined, the Court then considers the factors described in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974) to increase or decrease the lodestar amount, if appropriate.  <u>Gopher Oil Co., Inc. v. Union Oil Co. of Cal.</u>, 757 F. Supp. 998, 1009 (D. Minn. 1991 (citation omitted).  These factors include:

> (1) the time and labor required; (2) the novelty and
> difficulty of the questions; (3) the skill requisite to
> perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of

the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 1011 n. 16 (citing Johnson, 488 F.2d at 717-19).   Even though the Johnson factors may be used to increase or decrease the lodestar amount, "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."   Id.   In short, "[a]ssessing the reasonableness of a fee requires [the Court] to consider the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's lawyer conducted that activity."   Jenkins v. Missouri, 127 F.3d 709, 718 (8th Cir. 1997); see also Hensley, 461 U.S. at 433-34 (hours may be reduced by the court where documentation of the hours is inadequate, if the case was overstaffed, or if the "hours are excessive, redundant or otherwise unnecessary.").

The City submitted the affidavit of Corrine Heine in support of its sanctions. Motion.  Heine's affidavit stated that she has more than twenty-five years of experience in handling condemnation and inverse condemnation claims, the other lawyers who billed time to the file each has at least ten years of experience, and the paralegals and lawyers bill at rates between $95 dollars per hour and $165 dollars per hour.  Heine Fee Aff., ¶4.  Based on counsel's submissions and this Court's knowledge of and experience with prevailing rates in this legal market, these rates are extremely competitive compared to the rates of other attorneys in this community with similar knowledge and

practice experience. <u>Warnock</u>, 397 F.3d at 1027. Counsel's rates are unquestionably reasonable.

Next, the Court examined the number of hours expended by counsel to determine if they are reasonable in light of the outcome, the necessity and usefulness of the services provided, and the efficiency with which the attorneys conducted that activity in light of their expertise. In performing this calculation the Court must exclude "excessive, redundant or otherwise unnecessary hours." <u>Hensley</u>, 461 U.S. at 434. To determine whether hours were "reasonably expended," this Court reviews the attorneys' invoices line by line, making appropriate reductions where necessary. Based on this Court's review, the Court finds that a total award of $1,441.95 ($1295.25 in fees and $146.70 in costs) is appropriate.

In reaching this decision, the Court disallowed the time entries for April 27, 2011(MDT) ($49.50), (PGM) ($49.50) (CAH) ($49.50), May 4, 2011 (CAH) ($16.50)[10], May 11, 2011 (CAH) ($16.50), May 18, 2011 (PGM) ($33.00), May 27, 2011 (MDT) ($49.50), June 10, 2011 (PGM) ($33.00), reduced by half the entry of June 9, 2011 (PGM) ($24.75) and reduced by half the entry of July 19, 2011 (PGM) ($41.25). These entries or portions of these entries reflected conferences or email correspondence among the City's lawyers. There is no <u>per</u> <u>se</u> rule that the Court will not award fees for interoffice conferences between lawyers. But here, no evidence was presented to support the need for or benefit of such conferences. <u>See</u> <u>Mogck v. Unum Life Ins. Co.</u> <u>of Amer.</u>, 289 F. Supp. 2d 1181, 1194-95 (S.D. Cal. 2003) (rejecting fees for inordinate

---

[10] This entry also referenced "R Johnson demand to withdraw notice of appearance" and "Johnson's discovery demands," which are not related to the motion to dismiss.

amount of time spent on interoffice conferences); <u>Anglo-Danish Fibre Industr. v.</u> <u>Columbian Rope Co.</u>, 2003 WL 223082 *7 (W.D. Tenn. Jan. 28, 2003) (<u>quoting in part</u> <u>Schultz v. Amick</u>, 955 F. Supp. 1087, 1115 (N. D. Iowa 1997) ("interoffice conferences are the type of inefficiency and duplication of services that may occur in cases where more than one lawyer is used."). Therefore, the Court disallowed $313.50 in fees attributable to these conferences.

The Court disallowed the entries of April 28, 2011 (MDT) ($41.25) ("Phone call with B Heck regarding R Johnson strategy and meeting to discuss same")[11], May 9, 2011 (CAH) ($16.50) ("Email to B Heck regarding status of council action"), May 27, 2011 (CAH) ($33.00) ("Review Johnson email correspondence for week of May 23, email to P. Mikhail regarding brief"), June 2, 2011 (MDT) ($16.50) ("Manage incoming correspondence and discuss same with C Heine)  and June 2, 2011 (CAH) ($33.00) ("conference with M. Tietjen regarding Johnson correspondence") as overly vague. These entries totaled $140.25.

The Court disallowed the entry of May 19, 2011 (PGM) ($16.50) ("Instructions to assistant regarding motion to dismiss") as administrative.  <u>See</u>, <u>Mogck</u>, 289 F. Supp. 2d at 1193 ("["W]hen a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal service rates are not applicable."") (<u>quoting New Mexico</u> <u>Citizens for Clean Air & Water v. Espanola  Mercantile Co., Inc.</u>, 72 F.3d 830, 835 (10th Cir. 1996)).

---

[11]      Heck was not identified and no explanation was provided as to his or her role in the remand or sanctions motion.

In all, this Court recommends reducing the City's request for fees in the amount of $1,765.50 by $470.25 and awarding the City its full costs of $146.70 for a total award of  $1,441.95.

As for the City's estimate of fees and expenses related to its preparation of reply papers and for appearing at the motions hearing, this Court cannot award the City fees for undocumented expenses, as the City has asked.  Heine Fee Aff., ¶3.  Therefore, on or before January 20, 2012, the City shall serve and file a supplemental affidavit setting forth the hours expended by any attorneys or legal assistants on the reply and attendance at the hearing, a description of the services provided by each individual, the hourly rates for each individual, and the amount and a description of any additional costs incurred.  The Court will then determine the reasonable amount of fees to be awarded in connection with that work and will amend this Report and Recommendation to address the total amount of fees and costs the City should be awarded from the Johnsons.

## III.    <u>RECOMMENDATION</u>

For the reasons set forth above, it is recommended that:

1.    The City's Motion to Remand be Granted;

2.    The City's Motion for Sanctions be Granted in Part and Denied in Part as follows:

(a).    The Johnsons be prohibited from filing any new lawsuits and any pleadings or other papers in the District of Minnesota concerning their disputes with the City over their property unless (1) they are represented by counsel licensed to practice before this federal court, or (2) they obtain prior written approval from a United States District Court Judge or United States Magistrate Judge in the District of Minnesota;

(b)     The City be awarded fees and costs of $1441.95, and any additional fees and costs recommended by the undersigned in connection with the City's request for fees and costs associated with its preparation of its reply and attendance at the motions hearing.


Dated: January 12, 2012                              *Janie S. Mayeron*
                                                     JANIE S. MAYERON
                                                     United States Magistrate Judge


## NOTICE


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **fourteen days after this Court issues its Amended Report and Recommendation**, a writing which specifically identifies those portions of the Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within fourteen days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.